This morning is Howlink Global v. Network Communications and Consolidated Telecom, 2013-1181. Ms. Pruitt. Good morning, Your Honor. Adrienne Pruitt from Andrew Chung for the appellant, Howlink Global. It's a fundamental principle of patent law that the claims define the invention. In the patent claims here, the term at issue is voice of a caller. Voice of a caller encompasses both live and recorded voice. That's the ordinary meaning of voice of a caller. It's not restricted to live voice. It can be recorded voice, and there is nothing in the specification or the prosecution history that even addresses a distinction between live and recorded voice. Of course, this was added by amendment, right? Well, what was amended was really an entire element of the claim to distinguish the call flow of a prior art reference, Karamchedu. Originally, the examiner misread Karamchedu and didn't quite understand the call flow. In Karamchedu, the call flow is entirely different than in the 744 patent. In Karamchedu, the call flow begins by the caller not making the call, but by entering alphanumerically on a website the calling number, and the token is then passed to this Bridgeport server that makes a call to the called party and announces the collect call. So one major difference in Karamchedu is that there's no opportunity for the caller to speak to the Bridgeport computer in the first leg of this call flow. So there's no voice at all. There's no opportunity for live voice, and there's no opportunity for recorded voice. If we agree with you that because of this distinction that there wasn't really a disclaimer, but we otherwise find that if you examine the specification and you examine the claim language that the trial court got it right, is there anything left for you? Well, if you examine the specification, I don't think you can find that the trial court got it right. Okay, but assuming we did. Well, I'm not sure exactly what Your Honor is pointing to in the specification, but at the appendix of 210, you can look at column 8, lines 52 to 54 of the specification. The teaching of this specification is set forth there in an alternative embodiment. At step 320, there's a voice announcement that identifies the caller. I don't think you understood my question. Is there any possibility for a DOE claim here, or have you not asserted that? In other words, the disclaimer would clearly get rid of any DOE claim. But assuming we found that the claim construction required a live voice just because of the specification or the written description and the claim language, is there a DOE claim, or would it be impossible to assert that recording and live would be the same thing? Well, there's not been any distinction made in the specification between recording and live. Did you argue a doctrine of equivalence in this case? No, we did not. Okay. I didn't argue that. I mean, this case ended at claim construction when the district court added the limitation, live voice, to the claim, and the parties agreed that at that point there would be non-infringement. But what I wanted to stress at column 8, lines 52 to 54 of the specification, is that the live voice embodiment is specifically called out in the specification as an embodiment that can be omitted according to the provider's requirements. And that's quite important here, because obviously if a live voice... I'm sorry, what line were you on? This is at page 8210 of the appendix, and it's column 8, lines 52 to 54, where it specifically states that at step 325, using a live voice to identify the caller can be omitted per the provider's requirements. You can't really explain omitting live voice of the caller if there isn't an alternative embodiment identifying the caller through a recorded voice of the caller. But that's a pretty weak argument for saying that a recording is permitted. Well, the recording, I mean, in step 320, there's an announcement of the identity of the caller. And I think fundamentally in accepting a collect call and an understanding at that time, whether you're a person of ordinary skill in the art or just someone who has ever made a collect call, I think you understand that at some point in the process, the caller has to be identified. One of the distinctions in the 744 patent is that the caller's voice is used to identify the caller. And recorded voice was certainly anticipated in step 320. Live voice was also anticipated by this patent. And one of the things we did bring to the court's attention... You didn't really want to say anticipated. Well, not in the context of information, no. But in terms of what this invention teaches. And one of the things we did bring to the court's attention by way of a 28J letter was the fact that a second patent has now issued off this specification by the same examiner. And specifically in the claims of the second patent, the 766 patent, there are claims that are specifically directed to recorded voice. And we brought this to the court's attention to show that from the examiner's point of view, there was no disclaimer. There was nothing in the specification that precluded recorded voice. And I think this court has been very... But that's presumably a different claim. Well, there are different claims. That is correct. But the specification supports them. Let me ask you about the specific claim language that's at issue in, I think, all the asserted claims. And with respect to the voice of a caller and the voice transmission words. Now, you acknowledge, and I think this is in your reply brief, you acknowledge that temporary voice transmission, this is used in Claim 1 at Lines 6 through 10. That's the limitation. But you agree that temporary voice transmission means the same thing as temporarily transmitting the voice of a caller, correct? That's correct. And you also agree that prohibited voice transmission refers to an actual voice communication. That's correct. So does that leave us, does it not, with the proposition that if the words voice transmission on Lines 8 and 9 of Column 14 mean the same thing as voice transmission on Line 10, then voice of the caller necessarily has to be a live voice? I wouldn't agree with that, Your Honor, because I think the key here is in the modifier. And this is similar to... Well, but let's leave the modifier out for a minute and just ask the question of whether voice transmission... Well, let me ask you the question directly. Does the word, does the term voice transmission at Line 8 through 9 mean the same thing as voice transmission on Line 10? Again, before you get to the modifiers. Modifiers may make some, obviously, have some effect. But do those terms mean the same thing when you start out? When you start out without the modifier, I would say yes. And let me point something out about that, because this points out what I think is the fundamental inconsistency in the defendant appellee's argument here. When they want to say to the court that there's a disclaimer, they make this point that, well, the applicant came in and disclaimed, you know, replaced voice transmission with voice of the caller. And voice of the caller is somehow different and only means live voice. But then when we turn to the claim language, they make this inconsistent grammar argument where they leave the modifier out and say, well, voice of the caller is the same as voice transmission. Well, it may be inconsistent. But that doesn't mean that the first or second is independently wrong. You understand where I'm going with this? Because if you say that voice transmission means the same thing in Lines 8 through 9 and in Line 10, then it seems to me, by virtue of your other concessions, that voice transmission, prohibited voice transmission, refers to actual voice communication, that you've just agreed that voice transmission, whether prohibited or temporary, is voice of a caller. But I wouldn't agree with that, Your Honor. Why not? Because, well, I think that this falls squarely within the Helms-Dorfer v. Obert case that this court decided in 2008. That was a case where there were two claim terms. One was partially hidden from view, and the other was generally hidden from view. Mr. Preece, this is a question of this claim, this specification, more than another case. This claim says, then prohibiting voice transmission until a call acceptance arrives. Prohibiting until, implying that the transmission resumes. That pretty clearly means that the live caller voice resumes rather than restarting up a recording, doesn't it? Well, I think that would be completely inconsistent with the specification to interpret it that way, because the specification makes very clear that while a voice call link at the temporary stage is one embodiment, it can be omitted. You're relying on one sentence. Excuse me? You're relying on one sentence. But it's an important sentence, and when you look at the context of this case, the defendants in this case used the application envisioned by the applicants in prison. In prison, recorded voice is used because, obviously, if a prisoner is making a collect call from the prison to an unknown party, you're not going to put... So you're relying on one negative sentence as support for a broader interpretation of the claim. But it's an unequivocal sentence. I mean, the specification could be longer, but it's an unequivocal sentence. You can skip this step. You can use the prior step, Step 320, which encompasses the recorded voice of the caller. And I think the examiner, in issuing different claims off of the same specification, saw it the very same way. And I was mentioning the Helmsdorfer case because the emphasis there, although you're correct, Your Honor, this is a different case, but it points out the fact that phrases can be very different when the modifier is different. Temporary transmission is different than the prohibited transmission. Those are two different modifiers. The prohibited transmission, I think we all agree, that's the voice call. You can't put the voice call through. You can't put the caller through. But prohibiting until implies temporary. Consistent with temporary, doesn't it? Prohibiting until. Well, until the collect call acceptance. And you have temporary used in two places in this element. You have temporarily transmitting the voice of the caller, and then you have putting the prohibited call through after the temporary transmission. And so we do think that the temporary voice of the caller equates to the third use of voice transmission, which is temporary voice transmission. I'm into my rebuttal time. We'll save it for you. Thank you. Appellees are going to split up their argument. Mr. Dodson is going to take eight minutes. May I, Your Honor? May I please accord? I'm Darryl Dodson with the U.S. QE camera, and I'm going to take eight minutes. I represent NCIC. I think I'd like to address a couple of your questions first. First, Judge Bryson, I believe you had it exactly correct the way we see it, that you've got two terms that are identical, voice transmission, they mean the same thing. And I'll elaborate on that a little bit. That's one of my problem, I mean, three points. With respect to your question, Judge O'Malley, about doctrine of equivalence, I think that even if there wasn't found a disclaimer, you would still have prosecution history estoppel that would prevent a DOE claim because of the amendment made in response to an examiner's rejection. So I don't think there would be any scope for equivalence for it. I think your question was if we find otherwise that voice of appellers limited to live voice, do you have a DOE argument? And I don't think they do because of prosecution history estoppel. As was made clear, it wasn't raised. It was not, that's correct. Yes. Okay, so I think a lot has been said in the briefs about file history estoppel. I'm going to save that probably for last if I have any time and really tell you the reasons why the judgment of the court was correct even without file history estoppel. Can you turn to this section that counsel essentially rested her argument on, which is column A line, I guess it's pretty much 48 through 54. The step 325 line. The omission. The omission, yeah. Step 325? Well, the argument that step 325 can be omitted, and since step 325 refers to… I suppose that's an actual technological possibility, but these claims don't omit. I mean, step 325 is in the claims. The claims actually track figure 5 if you look at figure 5, which is in the record A201. So you're arguing that this is a matter that is described but not claimed? No, I'm saying that step 325 is claimed. Well, that's what I'm saying. The fact that it was described and not claimed means it's in the spec, but it was not claimed and therefore so what that it's in the spec. In other words, the sentence saying that 325 could be omitted is being argued as a positive disclosure supporting a broader interpretation. Right, but it wasn't omitted. Right, it is described that it could be omitted, but it wasn't omitted. Another thing she says about 320, she says, I believe that the spec discloses that in step 320 there could be an ID of the caller. I'm pretty sure the specification doesn't say that at all. The only disclosure of identification of the caller is in step 325. The only thing that 320 does is announce the collect call. So just stepping back to kind of an overview of what the technology is in this patent. We all remember the old days, the way collect calls were made, and you'd get a call and you'd pick it up and the operator would say, you have a collect call. And then she would open up the voice connection and there would be all these antics where you'd try to say as much as you said. We're all youngsters here. So you probably don't remember that. But, and then she would close that connection, okay, and get the acceptance of the collect call. That's exactly what's being disclosed here, only in the context of voice over IP. And there's really no broader disclosure than that in terms of how do you do a collect call. So getting back to my three points, I've got to hurry it up. So the first point is the temporal language in the claim. There's actually five temporal terms. The first is temporarily, transmitting, and then when the second communication link is made, and then prohibiting until collect call acceptance after the temporary transmission. So this is clearly a method that's performed in an order, okay. So that, you know, and so the district court cited Baldwin as a general rule that claims not limited to performance of steps in the order recited, but here the claim explicitly, we argue, puts these steps in a certain order. And for that reason, the claim language cannot be interpreted. What they want to interpret the claim to cover, the accused instrumentality, is a system in which a computer says you have a collect call from, and it just says, well, you know, and it's a short snippet of recording. So, and then the computer keeps going. And in fact, that open line of transmission between the computer is never shut off, okay. So there's never a prohibition of the communication transmission in the accused embodiment. And furthermore, the small snippet of recording is never prohibited. So there's never a prohibition of transmission. I know that's a non-infringement argument, but I think it's educational to see how you'd be construing the claims in light of the accused embodiment. My second argument of the antecedent basis argument is exactly what you said. Voice transmission means the same thing. They conceded that the temporary voice transmission has its antecedent basis as a temporarily transmitting, and therefore, because voice transmission means the same thing, temporarily transmitting must mean the same thing. It's the prohibition of transmission. And finally, temporary in the specification. You can scour the specification for the word temporary and ask yourself from the viewpoint of a person of ordinary skill, what disclosures are there of a temporary transmission? And the only disclosure is step 325 and the description in figures 5, 6, and 7 of the temporary voice transmission. And that is limited to the caller to callee transmission. With my final minute, I want to address this new patent that they have. Because I think that if you were inclined to consider that at all, then you really need to see the prosecution history. Because what you're not seeing is the examiner, in his final rejection, in bold and underlined, said, you do not have a written description for a recorded voice of a caller. And they took it out. And what they were left with was just recorded voice. So if we have to deal with that patent in the future, we're certainly going to argue that that was a clear disclaimer. Removal of recorded voice of a caller. That was a clear disclaimer that carved out some of the literal scope of the claim. So we can certainly supplement the record for the prosecution history, but if you're inclined to think about that patent, I think you should see it. Thank you, Mr. Dodson. Thank you. Mr. Kamara is going to talk to us for seven minutes. May it please the court, Kiwi Kamara for Consolidated Telecom. Your honors, I don't have much to add. So unless there are specific questions to our client, I'm not going to take very much time at all. It's clear to me that the argument based on the claim language is understood by the court. It's been presented ably by Mr. Dodson. We agree with it entirely. We think without reference to anything else, the claim terms alone show a requirement for transmission of a live voice, just like the stereotypical historical collect call. We think that DOE was a stipulation of non-infringement below, so that's out of the case. We think that the disclosure and the specification is exactly as the court understood it. It's disclosed but not claimed. There's perhaps an argument that it's claimed in this new patent. That would be the proper subject and later litigation should they decide to go after us on that. But the claims that are at issue in this case do not claim anything other than a live voice. If there are no other questions, I'll sit down. Thank you, counsel. Ms. Preetz has up to three minutes. The fact is the claims don't talk about live voice. The claims talk about voice of the caller, which encompasses both live and recorded voice. The fact is that this court has said time and time again that the plain language of the claims control absence of clear disavowal or disclaimer or an express definition. We don't find either of these in the prosecution history or the specification. In terms of talking about the embodiment, we believe there are alternative embodiments. But even if there were only a single embodiment, this court has been very clear that without words of manifest exclusion, a single embodiment is not going to control the scope of the claims. The scope of the claims can be broader than a single embodiment. To the extent the second patent is relevant, it simply shows that the examiner either agrees that the embodiment is shown in the specification or agrees that the specification supports the broader claims. But the fact is that in... Is it correct that the examiner said recording is not disclosed? We overcame that, and that's why there are two claims in the new patent that cover recorded voice. But the language about recording was not in the claim, right? Yes, it is in the claim. And in the new patent we signed it, dependent claims 15 and 30 explicitly limit caller voice to a recording. This was, you know, a lot of things are discussed and negotiated during a prosecution, and this was the same examiner and there was a lot of back and forth, but at the end of the day the examiner agreed with the applicant that this specification supports both live and recorded voice, and that was the upshot. But I go back to the point that a single embodiment, even a preferred embodiment, can't control the claims. There's no dispute in this case about several things. One, that the claims, the voice of the caller doesn't state live voice. There's no dispute that the distinction between live and recorded voice was never discussed at any point during the prosecution history, you know, up to the time of our case, and we did make available, by the way, to the examiner on the second patent all of the Markman briefings, the Markman decisions. The examiner had everything in front of him in making his decisions. So we come back to the fact that the teaching of the patent and the specification encompasses both, the claims encompass both, and the district court erred in adding a limitation to live voice that simply wasn't present in the specification, and that there is no amendment that supports that. If you look at what is being called the amendment, it was actually just a new claim that became the independent claims of the patent and recited the entire call flow of the 744 patent to distinguish it from Karamchedu, which had a completely different backwards call flow where the actual link to the calling part began with the call part and not at the start. Thank you. Ms. Breach will take the case under advisement. Thank you very much. All rise.